FILED
United States Court of Appeals
Tenth Circuit

August 31, 2017

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JAMIE STANTON,

     Plaintiff - Appellant,

v.

UNKNOWN AGENT OR AGENCY that
placed a GPS tracking device on plaintiff's
car 2 years ago in Colorado; JOHN DOE
(1), officer of the Oklahoma City Police
Department and other unknown officers;
JOHN DOE (2), officer of the Putnam City
Police Department and other unknown
officers; JOHN DOE (3), Officer of the
Green County Sheriff's Department; JOHN
DOE (4), Officers of the Eutaw, AL Police
Department; JOHN DOE (5), Officers of
the Wichita Police Department and other
unknown officers; JOHN DOE (6),
Officers of the Sedgwick County Sheriff's
Department,

     Defendants - Appellees.

No. 17-3098
(D.C. No. 2:17-CV-02120-DDC-KGG)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **BRISCOE**, **HARTZ**, and **BACHARACH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously
that oral argument would not materially assist in the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted
without oral argument. This order and judgment is not binding precedent, except under
the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R.
32.1.

Plaintiff Jamie Stanton believes he has been subjected to surveillance by numerous unnamed people for several years. Proceeding pro se and *in forma pauperis*, he filed suit against John Doe defendants in the United States District Court for the District of Kansas. The district court sua sponte dismissed his complaint for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii), which authorizes such dismissals for *in forma pauperis* complaints. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

Our standard of review is well-established. We review the district-court decision de novo. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). "We apply the same standard of review for dismissals under § 1915(e)(2)(B)(ii) that we employ for Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim." *Id.* "In the Rule 12(b)(6) context, . . . . we look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Id*. at 1218 (internal quotation marks and citations omitted). Although "we must construe a pro se appellant's complaint liberally[,] [t]his liberal treatment is not without limits, and this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Id.* (citation and internal quotation marks omitted).

Plaintiff's complaint describes the following events, among others: Beginning in late 2013, while he was living in Aurora, Colorado, other cars regularly followed his car two car lengths behind him. On a road trip from Colorado to Michigan in late 2013, cars drove side by side behind him on the interstate highway, "each maintaining about a half mile to a mile behind [his] car." Aplt. App., Vol. I at 6 (emphasis omitted). Starting in

2014, officers of the Putnam City, Oklahoma Police Department daily drove past him during his five-block walk to work in Putnam City, Oklahoma. On a road trip from Oklahoma to Alabama in 2016, cars followed his rental car side by side on the interstate highway about a mile behind him. When he moved to Eutaw, Alabama, in 2016, either a local sheriff or a Eutaw city police car arrived at his destination each time he went to town on five consecutive days. In Wichita, Kansas, in 2016 police cars followed him for "a few blocks to a mile" daily. Aplt. App., Vol. I at 9.

His observations extend beyond being followed by cars. The cellphones of passersby ring or vibrate when he is nearby. "[T]hey look at their phone, then reads [sic] whatever info they have just received, and then looks up [sic] and start looking around, then they look back down at their phones, or try to look away while responding to whatever info they had received via text." *Id.* at 7. Gas station attendants watch him while he pumps gas. In his Oklahoma apartment the heat or air-conditioning would turn on immediately when he entered the apartment. In his Wichita apartment, his downstairs neighbor regularly bangs on the wall. In that apartment in early 2017, when he heard a helicopter flying overhead, his refrigerator would begin to run. He moved his refrigerator from the wall and found a three-foot-by-two-foot hole behind it.

Plaintiff infers from these alleged facts that he is being surveilled and that a tracking device had been placed on his car sometime before December 2013 while he was living in Aurora. But he has not attempted to locate or remove the tracking device, nor has he offered any physical evidence that such a device exists. His complaint states, "I've thought of taking it off (not sure what it looks like but willing to give it a shot), but

3

I could not stop whoever was behind this from putting it back on, right?  By leaving it on, I at least, would know 'when' someone was following me?" *Id.* at 6.

Plaintiff appears to raise claims that these alleged activities violate his rights under the Fourth Amendment; Article 4, Section 2 of the U.S. Constitution; the Fifth Amendment Due Process Clause; the Fourteenth Amendment Privileges or Immunities, Due Process, and Equal Protection Clauses; and Title II of the Civil Rights Act of 1964; and he also claims racial profiling and racism.  Aside from the Fourth Amendment claim, we fail to discern, and Plaintiff does not explain, how any of the alleged activities could provide the basis for a cause of action.  He does state that he is an African American, but provides no reason to believe that he is targeted on that ground or that he has suffered any racial discrimination for which he would be entitled to relief.

As for Fourth Amendment rights, following and observing a person does not ordinarily implicate those rights.  *See United States v. Jones,* 565 U.S. 400, 412 (2012) ("[O]ur cases suggest that . . . visual observation [even by a large team of agents, using multiple vehicles and aerial assistance] is constitutionally permissible."); *United States v. Knotts,* 460 U.S. 276, 281 (1983) ("A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.").  But Plaintiff may have a claim for relief if law enforcement had placed a tracking device on his car.  *See Jones*, 565 U.S. at 404 ("We hold that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" (footnote omitted)).  The facts alleged by Plaintiff, however, although consistent with surveillance, do not raise the likelihood of

4

his being surveilled from possible to plausible. More importantly, after several years of alleged surveillance, he has no physical evidence of the tracking device that he believes to be on his car, nor has he tried to locate or remove it. And he raises no reason for the alleged surveillance in multiple states beyond a speculation that it is meant "to abuse and to harass, pure and simple." Aplt. App., Vol. I at 6. He admits that law enforcement has not approached him, questioned him, or taken him into custody during this time. With no allegation of physical evidence, credible motive, or actual police contact, Plaintiff's claims of being surveilled and having a tracking device placed on his car do not meet the standard of plausibility required to survive 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    CONCLUSION

We **AFFIRM** the district court's dismissal of Plaintiff's complaint.

Entered for the Court


Harris L Hartz
Circuit Judge

5